IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CALEB JANSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 24-CV-495-MTS |
| | ) |
| VIC REGALADO, in his Official Capacity | ) |
| as Tulsa County Sheriff, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court is Defendant Vic Regalado's Motion to Dismiss. (Docket No. 20). After considering the parties' briefing and relevant caselaw, the Court hereby **GRANTS** Defendant Regalado's Motion to Dismiss.

## Background and Procedural History

On June 21, 2024, Plaintiff Caleb Janson ("Plaintiff") commenced this action in Tulsa County District Court and Defendants removed the case to the Northern District of Oklahoma on October 17, 2024. (Docket No. 2). In the Complaint,[1] Plaintiff alleges claims against Defendants Tulsa County Sheriff Vic Regalado ("Regalado"), the Board of County Commissioners of Tulsa County, Oklahoma ("BOCC"), Latif Whitsett, John Carr, and Jimmy Foreman.[2] (Docket No. 2 at 5-22). These claims include: (1) excessive use of force in violation of Plaintiff's Fourth Amendment rights, 42 U.S.C. § 1983, brought against Defendant Whitsett; (2) failure to

---

[1] The Court refers to the Petition filed in state court as the Complaint herein.

[2] Defendants Whitsett, Carr, and Foreman are alleged to have been employees or agents of the Tulsa County Sheriff's Office ("TCSO") at all times relevant to the Complaint. (Docket No. 2 at 6-7).

intervene/failure to protect, 42 U.S.C. § 1983, brought against Defendants Carr and Foreman;[3] (3) municipal liability, 42 U.S.C. § 1983, brought against Defendant Regalado/Tulsa County; and (4) negligence, Okla. Stat. tit. 51, § 151, *et seq.*, brought against Defendants Regalado and BOCC.[4] *Id.*

According to the Complaint, Plaintiff, a high school student at the time, attended the Tulsa State Fair with a friend, Amanda Diedrich, on October 1, 2022. *Id.* at 7. Once there, the pair met another friend, identified only as Greg. *Id.* at 8. While waiting in line for a ride, Plaintiff removed a plastic bottle of vodka from a backpack and allowed other fairgoers to drink from the bottle. *Id.* Plaintiff then placed the bottle back into the backpack, which Ms. Diedrich carried at the time. (Docket No. 2 at 8).

A fairgoer alerted the TCSO, which provided law enforcement services at the fair, of what occurred in the line. *Id.* After speaking with Plaintiff and his friends, and discovering the vodka in the backpack, TCSO deputies placed Ms. Diedrich under arrest. *Id.* During this interaction, a TCSO deputy placed the bottle of vodka on the ground nearby. (Docket No. 2 at 8). Plaintiff, upset by Ms. Diedrich's treatment, then grabbed the bottle and "attempted to throw it away from the deputies." *Id.* at 9. Defendant Whitsett then took Plaintiff to the ground, where Defendants Whitsett and Carr then "aggressively attempted to place Plaintiff in handcuffs." *Id.*

Although Plaintiff was not disobeying commands, actively resisting, verbally threatening anyone, attempting to flee, or suspected of committing a violent crime, Defendant Whitsett

---

[3] On December 6, 2024, Plaintiff filed a Notice of Dismissal Without Prejudice as to Defendant Jimmy Foreman, terminating him from this matter. (Docket No. 28).

[4] On December 13, 2024, Plaintiff filed a Notice of Partial Voluntary Dismissal Without Prejudice dismissing his negligence claim. (Docket No. 29).

allegedly struck Plaintiff in the chest/neck area with his elbow. *Id.* at 8, 9. While Defendant Carr attempted to handcuff Plaintiff, Defendant Whitsett then allegedly placed his knee on the back of Plaintiff's neck, "press[ing] the entirety of his body weight down on Plaintiff[.]" *Id.* at 10. Defendants Whitsett and Carr then took Plaintiff to a holding area at the fair to await transport to a hospital for injuries sustained to his face, jaw, and teeth. (Docket No. 2 at 11, 12). According to Plaintiff, there were multiple witnesses to the encounter, one of whom recorded the incident on video. *Id.* at 8, 9, 11.

Plaintiff's Complaint also alleges that following the incident at the fair, the "TCSO's public information officer stated that '[d]uring the scuffle, the [Plaintiff] grabbed the groin area of a deputy . . . [Plaintiff] then used his fingers to twist the deputy's flesh. The deputy responded with a use of force.'" *Id.* at 12 (citation omitted). The TCSO also denied that deputies placed a knee across Plaintiff's neck, which Plaintiff disputes, claiming that a video of the incident shows otherwise. *Id.* at 13. Upon Plaintiff's information and belief, the TCSO did not punish Defendant Whitsett for the incident. *Id.* at 14.

Plaintiff asserts there is an affirmative link between the incident at the fair and the policies, practices, and customs of the TCSO. (Docket No. 2 at 14). Specifically, he contends that the TCSO/Tulsa County failed to adequately train and supervise its officers with respect to: "use of force, de-escalation, the use of force continuum, use of force on a citizen, current and binding use of force case law, and use of force on individuals who are not suspected of any crime and are not resisting." *Id.* Further, he claims that "[d]ue in part to the lack of training . . . the TCSO had an unabated and long-standing policy or practice of allowing its personnel to engage in unnecessary, unreasonable, and excessive force on arrestees, particularly arrestees who are not suspected of a serious crime and who pose no threat." *Id.* Lastly, Plaintiff contends that Defendant Regalado

"adopted, ratified, enforced, and maintained a policy or practice" allowing employees to kneel on the necks of restrained suspects and that this maneuver was a result of Defendant Regalado's proclamation prior to the fair that the TCSO would take a "no-nonsense approach" to security.[5] *Id.* at 15.

On November 8, 2024, Defendant Regalado filed his Motion to Dismiss. (Docket No. 20). Plaintiff filed his Response on December 13, 2024, (Docket No. 31), and Defendant Regalado filed his Reply on January 1, 2025 (Docket No. 35). As such, the instant matter is ripe for consideration.

## **Legal Standard**

Defendant Regalado seeks dismissal of Plaintiff's claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).[6] In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court set forth the plausibility standard applicable to a motion to dismiss filed under Rule 12(b)(6). *Bell Atlantic* stands for the summarized proposition that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678, quoting *Bell Atl.*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Bell Atl.*, 550 U.S. at 556; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)

---

[5] Tanya Modersitzki, *TCSO's 'no-nonsense' security at the 2022 Tulsa State Fair*, Fox 23 News (Sept. 28, 2022), https://www.fox23.com/news/tcsos-no-nonsense-security-at-the-2022-tulsa-state-fair/article_f2763e6a-da7c-5330-99fc-50047d7ea1e9.html.

[6] Defendant Regalado also argues that the Court is without subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), to hear Plaintiff's negligence claim. (Docket No. 20 at 1, 10-11). Because Plaintiff filed a Notice of Partial Voluntary Dismissal Without Prejudice dismissing his negligence claim, (Docket No. 29), the Court limits its discussion to Defendant Regalado's Rule 12(b)(6) arguments.

(interpreting the plausibility standard as referring "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible.") (quotation omitted). However, a court need not accept as true allegations that are conclusory in nature. *Id.* at 678 ("[T]he tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."), citing *Bell Atl.*, 550 U.S. at 555.

## Discussion

"The Supreme Court has made clear that 'a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Waller v. City and Cty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019), quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). It "'cannot be held liable under § 1983 on a *respondeat superior* theory[,]' . . . [but] may only be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Id.*, quoting *Monell*, 436 U.S. at 691, 694. Thus, to establish a claim of municipal liability under § 1983, a plaintiff "must prove [an] (1) official policy or custom[,] (2) causation, and (3) state of mind." *Hinkle v. Beckham Cty. Bd. of Cty. Comm'rs*, 962 F.3d 1204, 1239 (10th Cir. 2020), quoting *Burke v. Regalado*, 935 F.3d 960, 998 (10th Cir. 2019) (internal quotation omitted). Additionally, "a municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citation omitted).

A plaintiff may demonstrate a municipal policy or custom by any of the following forms:

(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express

> municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller*, 932 F.3d at 1283, quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010). Moreover, demonstrating causation requires "a direct causal link between the policy or custom and the injury alleged." *Graves*, 450 F.3d at 1218. Further, "a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action . . . led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997), quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Graves*, 450 F.3d at 1218 ("When the claim is a failure to act, the plaintiff must demonstrate the municipality's inaction was the result of deliberate indifference to the rights of its inhabitants.") (quotation omitted). Thus, "a municipality is liable only when the official policy is the 'moving force' behind the injury alleged." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

In response to Defendant Regalado's Motion to Dismiss, Plaintiff contends "that his Fourth Amendment rights were violated due to Sheriff Regalado's (1) failure to train TCSO deputies on the use of force, and (2) his public proclamation that the TCSO was taking a 'no-nonsense approach' to security at the fair." (Docket No. 31 at 12), citing Docket No. 2-1 at 14-15. After review of the Complaint, the Court addresses the following theories of municipal liability: the decision or ratification by a final policymaker and failure to train and supervise.

      A.      **Decision or Ratification by a Final Policymaker**

Whether an official has final policymaking authority is a matter of state and local law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). The Tenth Circuit has previously determined that, "[a]s the chief law enforcement officer of the county, the Sheriff is the official policy maker of the county in all matters related to his statutory law enforcement duties[.]" *Attocknie v. Smith*, No. CIV-13-158-JHP, 2014 WL 3496917, at *7 (E.D. Okla. July 11, 2014), citing *Reid v. Hamby*, 124 F.3d 217 (10th Cir. 1997). "[A] municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." *Bryson*, 627 F.3d at 790. In other words, if a final policymaker approves of a subordinate's decision to act unconstitutionally and the basis for such decision, municipal liability may attach. *See Praprotnik*, 485 U.S. at 127; *Jensen v. West Jordan City*, 968 F.3d 1187, 1204 (10th Cir. 2020).

According to Plaintiff's Complaint, Defendant Regalado's "proclamation that the TCSO was 'taking a no-nonsense approach' to security at the fair" emboldened Defendant Whitsett to use excessive force during his encounter with Plaintiff. (Docket No. 2 at 15). Defendant Regalado's proclamation, according to Plaintiff, is representative of a TCSO policy permitting employees to kneel on the necks of restrained suspects despite known risks associated with such a maneuver. *Id.* at 15. Plaintiff also asserts that the TCSO issued statements following the incident at the fair disputing Plaintiff's version of events and denying that Defendant Whitsett knelt on Plaintiff's neck. *Id.* at 12-14. Defendant Whitsett allegedly did not receive punishment for his conduct, which Plaintiff claims indicates that "the TCSO approved of and/or authorized the actions of Defendants Whitsett, Carr, and Foreman." *Id.* at 14.

Defendant Regalado asserts that Plaintiff failed to provide more than conclusory statements giving rise to an inference that he made a decision as final policymaker or ratified Defendant Whitsett's conduct. (Docket No. 20 at 10). Plaintiff responds that Defendant Regalado's proclamation that the TCSO would take a "no-nonsense approach" to law enforcement at the fair constituted a decision as final policymaker which resulted in Defendant Whitsett's allegedly excessive use of force. (Docket No. 31 at 20).[7] Additionally, Plaintiff appears to assert Defendant Regalado's proclamation equates to an official sanction of Defendant Whitsett's conduct. *Id.* at 21.

Without deciding whether Defendant Regalado's proclamation actually constitutes a policy, the Court finds Plaintiff has not adequately alleged a direct causal link between Defendant Regalado's proclamation and Plaintiff's alleged injuries. Any causal nexus between Defendant Regalado's proclamation that law enforcement would take a "no-nonsense approach" regarding fairgoers carrying firearms and Plaintiff's injuries resulting from Defendant Whitsett's alleged use

---

[7] In response to Defendant Regalado's arguments, Plaintiff cites *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995) and *Buck v. Rhoades*, 598 F. Supp. 3d 1181, 1194 (N.D. Okla. 2022) to support his claim. (Docket No. 31 at 20). While the general proposition that a policy can result from a one-time decision by a final policymaker is supported by caselaw, *Randle* and *Buck* are distinguishable from the instant case. *Randle* dealt with an employee suing an employer and city for race and national origin discrimination under 42 U.S.C. §§1981 and 1983, and Title VII. 69 F.3d at 446. The situation in *Buck* involved a plaintiff who was removed from a political rally by local law enforcement at the direction of private campaign officials. 598 F. Supp. 3d at 1188. The *Buck* plaintiff asserted that the City of Tulsa, through the Tulsa Police Department, was municipally liable for the alleged constitutional violations at issue due to a statement released by the Tulsa Police Department indicating that it instituted "a policy of removing individuals from a public city street at the direction of a private organization that did not have permission to block access to a public street." *Id.* at 1195. The district court found the plaintiff's allegations sufficiently stated a municipal liability claim that the city's conduct, through its police department, directly caused the alleged constitutional deprivations pursuant to an official policy or sanction. *Id.* Defendant Regalado's "no-nonsense approach" to fairgoers illegally carrying firearms at a public event is not akin to the statement at issue in *Buck*, which explicitly advised that law enforcement maintain a policy of removing individuals from public streets regardless of their constitutional right to be there.

of excessive force is too attenuated. *See York v. Welch*, No. 20-40580, 2024 WL 775179, at *4 (5th Cir. Feb. 26, 2024) (finding the plaintiff's allegations that the Beaumont Police Chief's comments on the Beaumont Police Department's shoot-to-kill policy were a moving force leading to unreasonable use of force insufficient to state a claim for municipal liability); *Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986) (concluding that the defendant sheriff's statement that he would "rather [he and his employees] be tried by twelve than carried by six" to be "too slender a reed to support the conclusion that he encouraged his deputies to use excessive force."). Even construing Plaintiff's allegations in a light most favorable to him, the Court fails to see a connection between Defendant Regalado's statement regarding gun regulation and an alleged unconstitutional use of force by kneeling on the neck of a restrained suspect. Therefore, the Court finds Plaintiff's allegations do not support the claim that Defendant Regalado made a decision to authorize, encourage, or sanction the use of excessive force in encounters like the one that allegedly occurred in this case.

      Moreover, the TCSO's denial of Plaintiff's factual allegations following the incident at the fair as to the force used by Defendant Whitsett, in and of itself, is insufficient to support a ratification claim. Disputing the events at issue, without more, does not support a claim that Defendant Regalado approved of Defendant Whitsett's decision to allegedly act unconstitutionally. Furthermore, "[f]ailing to . . . punish does not count as ratification." *Lynch v. Bd. of Cty. Comm'rs of Muskogee Cty.*, 786 F. App'x 774, 787 (10th Cir. 2019), citing *Bryson*, 627 F.3d at 790. Therefore, the Court finds Plaintiff's allegations do not support the claim that Defendant Regalado ratified Defendant Whitsett's conduct.

Accordingly, Defendant Regalado's Motion to Dismiss is granted on these bases, and Plaintiff's claims based on a decision by a final policymaker and ratification by a final policymaker are dismissed without prejudice.

### B. Failure to Train and Supervise[8]

The Supreme Court has warned that "'[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'" *Waller*, 932 F.3d at 1285, quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To allege a failure-to-train theory of liability, "the plaintiff must prove 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need' for additional training." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996), citing *City of Canton*, 489 U.S. at 390. "The Tenth Circuit treats allegations of failure to train and failure to supervise the 'same way.'" *Phelps v. Holliman*, Case No. CIV-23-755-F, 2023 WL 7553627, at *3 (W.D. Okla. Nov. 14, 2023), quoting *Whitewater v. Goss*, 192 F. App'x. 794, 797 (10th Cir. 2006).

To establish deliberate indifference, a plaintiff must make the following showing:

> The deliberate indifference standard may be satisfied when the municipality ha[d] actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation, and it consciously or deliberately cho[s]e to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of

---

[8] Plaintiff's response brief evaluates his failure to train claim utilizing the elements set out in *Graham v. City of Lone Grove*, No. 19-CV-298-JFH, 2022 WL 2070607, at *8 (E.D. Okla. June 8, 2022). This Court has reviewed *Graham* and elects not to apply the *Graham* elements when determining a motion to dismiss for failure to state a claim. *Graham* involved motions for summary judgment, including arguments that certain officers' use of force and other conduct did not violate the defendant's constitutional rights. *Id.* at 1. Here, Defendant Regalado challenges Plaintiff's allegations of municipal liability at the pleading stage and does not specifically address whether the force used amounted to a violation of Plaintiff's constitutional rights. Moreover, the Court reviewed several cases which applied *Graham*, all of which addressed motions for summary judgment.

> circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.

*Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769-70 (10th Cir. 2013), quoting *Barney*, 143 F.3d at 1307-08.

In the Complaint, Plaintiff alleges that "the County/TCSO failed to adequately train and supervise its officers . . . with respect to, inter alia: use of force, de-escalation, the use of force continuum, use of force on a citizen, current and binding use of force case law, and use of force on individuals who are not suspected of any crime and are not resisting." (Docket No. 2 at 14). He asserts that "[d]ue in part to the lack of training provided to its employees, the TCSO had an unabated and long-standing policy or practice of allowing its personnel to engage in unnecessary, unreasonable, and excessive force on arrestees, particularly arrestees who are not suspected of a serious crime and who pose no threat." *Id.* Plaintiff also alleges that "the TCSO policy or practice did not prohibit [Deputy] Whitsett from kneeling on Plaintiff's neck, while he was subdued." *Id.* at 15.

In support of the allegations, Plaintiff cites to three lawsuits as examples of "other instances of constitutional deprivations within the TCSO that the County/[Defendant] Regalado were aware of, but failed to alleviate[.]"[9] *Id.* at 14, 19. He maintains that Defendant Regalado "knew, or must have known or should have known that – due to its obviously inadequate training, supervision, and discipline – unconstitutional conduct toward arrestees/detainees by TCSO personnel was probable and almost certain," and therefore "created and tolerated and maintained long-standing, unconstitutional department-wide customs, law enforcement related policies, procedures and

---

[9] Plaintiff cites to the cases of *Wilson v. Regalado*, Case No. CV-2021-00494 (Tulsa Cty. Dist. Ct. Apr. 8, 2021); *Walker v. Anderson*, Case No. 23-CV-0008-CVE-JFJ, 2023 WL 3111699 (N.D. Okla. Apr. 26, 2023); and *Barre v. Ramsey*, 601 F. Supp. 3d 1038 (N.D. Okla. 2022).

practices, and failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference with respect to uses of excessive force." *Id.* Thus, such "deliberately indifferent training and supervision . . . resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available and were also moving forces behind the violation of Plaintiff's civil rights and [his] resulting injuries[.]" *Id.*

Defendant Regalado contends that such allegations fail to establish a viable theory of municipal liability based upon the failure to train and are merely "generalized" and "conclusory" allegations of deficiencies in training. (Docket No. 20 at 6-7). Moreover, he argues that Plaintiff's allegations do not satisfy the deliberate indifference standard as Plaintiff fails to allege facts necessary to show that Defendant Regalado "was on notice that TCSO training [was] deficient, or that he consciously or deliberately chose to disregard the potential harm." *Id.* Specifically, Defendant Regalado asserts the examples cited by Plaintiff in the Complaint lack factual support and fail to satisfy "the necessary pattern of similar constitutional violations" to establish deliberate indifference. *Id.* at 7-9. Further, he maintains that Plaintiff's factual allegations "do not present the 'rare and narrow set of circumstances where a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, which would allow [a] court to infer deliberate indifference without proof of a pre-existing pattern of violations.'" (Docket No. 35 at 1), quoting *Roquemore v. El Paso Cty.*, No. 1:23-CV-00072-NYW-SBP, 2024 WL 4268154, at *8 (D. Colo. Aug. 21, 2024).

Here, Plaintiff's Complaint lacks the supporting factual allegations necessary to support a municipal liability claim based upon a failure to train theory. Although Plaintiff identifies general categories of training program deficiencies, Plaintiff provides no specific allegations of deficiencies, *e.g.*, "how the officers were trained, who they were trained by, or why their training

12

was deficient." *Sodaro v. City and Cty. of Denver*, 629 F. Supp. 3d 1064, 1082 (D. Colo. 2022) (finding factual allegations of a failure-to-train theory insufficient when the plaintiff "d[id] not set forth any facts concerning how the [o]fficers were trained, who they were trained by, or why their training was deficient."); *see also Hernandez v. City and Cty. of Denver*, Civil Action No. 21-cv-01538-PAB-MEH, 2022 WL 3597452, at *7 (D. Colo. Aug. 23, 2022) ("These allegations lack any supporting factual allegations providing a basis for plaintiff's failure-to-train theory. Plaintiff does not set forth any facts concerning how Officer Johnson, Officer Larson, or Sergeant O'Neill were trained, who trained them, or why their training was deficient."); *Gaines v. City of Moore*, Case No. CIV-20-851-D, 2021 WL 3284269, at *5 (W.D. Okla. July 30, 2021) (finding theory of liability for failure to train and supervise employees was unsupported when Plaintiff provided "no facts as to the training program or how it was deficient"); *Brashear v. Tulsa Cty. Bd. of Cty. Comm'rs*, Case No. 15-CV-473-GKF-PJC, 2016 WL 633374, at *3 (N.D. Okla. Feb. 17, 2016) (citing cases that allegations of "general deficiencies in the county's training program" are conclusory and "not enough" to state a claim for failure to train) (citations omitted).

Moreover, Plaintiff failed to allege facts that plausibly support an inference that Defendant Regalado acted with deliberate indifference. Although he cites to three cases in the Complaint, Plaintiff does not sufficiently allege a pattern of similar constitutional violations that would have put Defendant Regalado on notice of deficiencies in use of force training. As Defendant Regalado points out, simply citing the cases does not provide the factual specificity necessary to establish notice of constitutionally deficient training. (*See* Docket No. 20 at 7). Plaintiff fails to allege when these other incidents occurred, whether the other incidents involved the deputy defendants in this case, and any similarities between these other incidents and the incident involving Plaintiff.

Further, a review of the cases reveals that at least two of them did not include municipal liability claims based upon a failure to train or supervise. *See Wilson*, Case No. CV-2021-00494 (the case did not include a § 1983 claim of excessive force or failure to train, but a state law claim of "negligence in failing to adequately hire, train, supervise, and monitor their officers"); *Walker*, 2023 WL 3111699, at *1 (noting that excessive force claim remained against individual, but the plaintiff dismissed municipal liability claims against Defendant Regalado, including claim for failure to train).[10]

Lastly, the allegations in Plaintiff's Complaint are insufficient for this case to fall within the "narrow range of circumstances" that would justify a finding of deliberate indifference without establishing a pattern of similar constitutional violations. As previously discussed herein, Plaintiff's factual allegations are generalized and conclusory and therefore inadequate to support an inference that the alleged conduct was a "highly predictable" or "plainly obvious" consequence of the alleged failure to train or supervise by Defendant Regalado. *See Waller*, 932 F.3d at 1284; *see also Parker v. Universal Prot. Serv., LP*, Case No. 25-cv-68-JFH-MTS, 2025 WL 1490062, at *6 (N.D. Okla. May 23, 2025) (finding similar general allegations of training deficiencies were "too bare and devoid of factual detail for this Court to hold that a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.") (quotation omitted).

---

[10] It does not appear from Plaintiff's Complaint that he is alleging an informal custom amounting to a widespread practice as a theory of municipal liability. *See Bryan Cty.*, 520 U.S. at 404 ("[A]n act performed pursuant to a custom that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."). In any event, such theory would fail for the same reasons discussed above.

Accordingly, the Court finds that Plaintiff failed to allege a municipal liability claim based upon the failure to train or supervise against Defendant Regalado. Defendant Regalado's Motion to Dismiss is therefore granted on this basis, and Plaintiff's claim based on a failure to train theory is dismissed without prejudice.

### C.  Leave to Amend

Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course no later than . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Moreover, Rule 15(a)(2) provides that "[i]n all other cases, a party may amend its pleading only with the party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." While "[t]he liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits[,]" *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999), granting leave to amend is ultimately discretionary. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Grounds for denying leave to amend include "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009), quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). However, the Tenth Circuit has instructed that a court should dismiss with leave to amend "if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief." *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994).

In his response brief to Defendant Regalado's Motion to Dismiss, Plaintiff requests that the Court grant him leave to amend should it determine that he failed to state a claim upon which relief could be granted. (Docket No. 31 at 21-22). He asserts that the Court should grant him leave to amend because: (1) Plaintiff has not previously amended his Complaint; (2) there would be no undue delay as the case is in its infancy and a scheduling order has not been entered; and (3) any lack of factual specificity in the Complaint "can easily [be] cure[d]." *Id.* at 22. Defendant Regalado disputes Plaintiff's last assertion, arguing that his request should be denied as amendment would be futile. (Docket No. 35 at 3).

Although Plaintiff's request does not set out with specificity how any pleading deficiencies could be cured via amendment, *Albers v. Bd. of Cty. Comm'rs of Jefferson City*, 771 F.3d 697, 706 (10th Cir. 2014) ("[A] bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based."), the Court finds there are insufficient grounds upon which to deny Plaintiff's request. The Court has yet to enter a scheduling order in the case, and Plaintiff has not previously amended his Complaint. Moreover, Defendant Regalado does not assert that he would be subject to undue prejudice, nor does he allege that Plaintiff's request is one made in bad faith or with dilatory motive. Therefore, in the interest of justice and adhering to the policy of disposing with claims on the merits, the Court hereby **GRANTS** Plaintiff leave to amend the Complaint as to Defendant Regalado.

## Conclusion

For the reasons discussed herein, Defendant Regalado's Motion to Dismiss (Docket No. 20) is hereby **GRANTED**. Further, Plaintiff's request for leave to amend the Complaint is **GRANTED**. Plaintiff may file an amended complaint on or before **Wednesday, June 25, 2025**.

16

IT IS SO ORDERED this 11th day of June, 2025.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT