IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CALEB JANSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 24-CV-495-MTS |
| | ) |
| VIC REGALADO, in his Official Capacity | ) |
| as Tulsa County Sheriff, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Before the Court is Defendant Vic Regalado's Motion to Dismiss Plaintiff's Amended Complaint. (Docket No. 44). After considering the parties' briefing and relevant caselaw, the Court hereby **GRANTS** Defendant Regalado's Motion to Dismiss.

**Background and Procedural History**

Plaintiff Caleb Janson ("Plaintiff") originally filed his Complaint[1] on June 21, 2024, alleging claims against Defendants Tulsa County Sheriff Vic Regalado ("Regalado"), the Board of County Commissioners of Tulsa County, Oklahoma ("BOCC"), Latif Whitsett ("Whitsett"), John Carr ("Carr"), and Jimmy Foreman.[2] On November 8, 2024, Defendant Regalado filed a Motion to Dismiss, which the Court granted on June 11, 2025. (Docket Nos. 20, 39). The Court also granted Plaintiff's request for leave to amend the Complaint, and Plaintiff filed his Amended Complaint on June 25, 2025. (Docket No. 41). In the Amended Complaint, Plaintiff brings claims

---

[1] The Court refers to the Petition filed in state court as the Complaint herein.

[2] Plaintiff dismissed Defendant Foreman on December 6, 2024, terminating him from this matter. (Docket No. 28). Based upon a voluntary dismissal filed by Plaintiff on December 13, 2024 (Docket No. 29), the Court dismissed the BOCC as a party to the action on June 11, 2025. (Docket No. 40).

for (1) excessive use of force in violation of Plaintiff's Fourth Amendment rights, 42 U.S.C. § 1983, against Defendant Whitsett; (2) failure to intervene/failure to protect, 42 U.S.C. § 1983, against Defendant Carr; and (3) municipal liability, 42 U.S.C. § 1983, against Defendant Regalado/Tulsa County. *Id.* at 12-17.

According to the Amended Complaint, Plaintiff, a high school student at the time, attended the Tulsa State Fair with a friend, Amanda Diedrich, on October 1, 2022. *Id.* at 3. Once there, the pair met another friend, identified only as Greg. *Id.* While waiting in line for a ride, Plaintiff removed a plastic bottle of vodka from a backpack carried by Ms. Diedrich and allowed other fairgoers to drink from the bottle. *Id.* Plaintiff then placed the bottle back into the backpack. *Id.*

A fairgoer alerted the Tulsa County Sheriff's Office ("TCSO"), which provided law enforcement services at the fair, as to what occurred in the line. *Id.* at 3. After speaking with Plaintiff and his friends, and discovering the vodka in the backpack, TCSO deputies placed Ms. Diedrich under arrest. *Id.* at 3-4. During this interaction, a TCSO deputy placed the bottle of vodka on the ground nearby. *Id.* at 4. Plaintiff, upset by Ms. Diedrich's treatment, then grabbed the bottle and "attempted to throw it away from the deputies." *Id.* Defendant Whitsett then allegedly took Plaintiff to the ground, where he and Defendant Carr "aggressively attempted to place Plaintiff in handcuffs." *Id.*

Plaintiff contends that "seconds after" being thrown to the ground, he was "violently struck" in the chest/neck area by Defendant Whitsett's elbow. *Id.* According to Plaintiff, he was not disobeying commands, actively resisting, verbally threatening anyone, attempting to flee, or suspected of committing a violent crime. *Id.* at 4-5. While Defendant Carr attempted to handcuff Plaintiff, Defendant Whitsett allegedly placed his knee on the back of Plaintiff's neck, "press[ing] the entirety of his body weight down on Plaintiff[.]" *Id.* at 5.

2

Defendants Whitsett and Carr then took Plaintiff to a holding area at the fair to await transport to a hospital for injuries sustained to his face, jaw, and teeth. *Id.* at 6. According to Plaintiff, there were multiple witnesses to the encounter, one of whom recorded the incident on video. *Id.* at 4, 6-8.

Plaintiff's Amended Complaint also alleges that following the incident at the fair, "TCSO's public information officer stated that '[d]uring the scuffle, the [Plaintiff] grabbed the groin area of a deputy . . . [Plaintiff] then used his fingers to twist the deputy's flesh. The deputy responded with a use of force.'" *Id.* at 7 (citation omitted). TCSO also denied that deputies placed a knee across Plaintiff's neck, which Plaintiff disputes, claiming that a video of the incident shows otherwise. *Id.* at 8. Upon Plaintiff's information and belief, TCSO did not punish Defendant Whitsett for the incident and promoted him to Sergeant shortly thereafter. *Id.* at 8-9

Plaintiff asserts there is an affirmative link between the incident at the fair and the policies, practices, and customs of TCSO. *Id.* at 9-12. Specifically, he contends that TCSO/Tulsa County failed to adequately train and supervise its officers with respect to: "use of force, de-escalation, the use of force continuum, use of force on a citizen, current and binding use of force case law, and use of force on individuals who are not suspected of any crime and are not resisting[,]" in addition to "the danger of applying pressure to a suspect's neck/back while the suspect is lying prone on their stomach." *Id.* at 9. He also claims TCSO's use of force policy allows officers to use "pressure points," punches, kicks, and strikes to an individual's face, torso, or joint areas during an arrest but fails to train or instruct its deputies on how, and when, to use these techniques. *Id.* at 10.

Further, he asserts that "[d]ue in part to the lack of training . . . TCSO had an unabated and long-standing policy or practice of allowing its personnel to engage in unnecessary, unreasonable,

3

and excessive force on arrestees, particularly arrestees who are not suspected of a serious crime and who pose no threat." *Id.* at 11.

Lastly, Plaintiff contends that Defendant Regalado "adopted, ratified, enforced, and maintained a policy or practice" allowing employees to kneel on the necks of restrained suspects and that this maneuver was the result of Defendant Regalado's proclamation prior to the fair that TCSO would take a "no-nonsense approach" to security.³ *Id.* at 10, 12. Plaintiff asserts that this approach "emboldened" Defendant Whitsett's "warrior mindset" leading him to unnecessarily escalate the encounter with Plaintiff and use unreasonable force against him. *Id.* at 12.

On July 9, 2025, Defendant Regalado filed his Motion to Dismiss Plaintiff's Amended Complaint. (Docket No. 44). After receiving extensions of time, Plaintiff filed his Response on August 6, 2025, and Defendant Regalado filed his Reply on August 27, 2025. (Docket Nos. 47, 50). As such, the instant matter is now ripe for consideration.

## **Legal Standard**

Defendant Regalado seeks dismissal of Plaintiff's claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court set forth the plausibility standard applicable to a motion to dismiss filed under Rule 12(b)(6). *Bell Atlantic* stands for the summarized proposition that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678, quoting *Bell Atl.*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

³ Tanya Modersitzki, *TCSO's 'no-nonsense' security at the 2022 Tulsa State Fair*, Fox 23 News (Sept. 28, 2022), https://www.fox23.com/news/tcsos-no-nonsense-security-at-the-2022-tulsa-state-fair/article_f2763e6a-da7c-5330-99fc-50047d7ea1e9.html.

4

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Bell Atl.*, 550 U.S. at 556; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (interpreting the plausibility standard as referring "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible.") (quotation omitted). However, a court need not accept as true allegations that are conclusory in nature. *Id.* at 678 ("[T]he tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."), citing *Bell Atl.*, 550 U.S. at 555.

## **Discussion**

"The Supreme Court has made clear that 'a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Waller v. City and Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019), quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). It "'cannot be held liable under § 1983 on a *respondeat superior* theory[,]' . . . [but] may only be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Id.*, quoting *Monell*, 436 U.S. at 691, 694. Thus, to establish a claim of municipal liability under § 1983, a plaintiff "must prove [an] (1) official policy or custom[,] (2) causation, and (3) state of mind." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1239 (10th Cir. 2020), quoting *Burke v. Regalado*, 935 F.3d 960, 998 (10th Cir. 2019) (internal quotation omitted). Additionally, "a municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citation omitted).

> A plaintiff may demonstrate a municipal policy or custom by any of the following forms:
>
> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller*, 932 F.3d at 1283, quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010). Moreover, demonstrating causation requires "a direct causal link between the policy or custom and the injury alleged." *Graves*, 450 F.3d at 1218. Further, "a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action . . . led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997), quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Graves*, 450 F.3d at 1218 ("When the claim is a failure to act, the plaintiff must demonstrate the municipality's inaction was the result of deliberate indifference to the rights of its inhabitants.") (quotation omitted). Thus, "a municipality is liable only when the official policy is the 'moving force' behind the injury alleged." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

In response to Defendant Regalado's Motion to Dismiss, Plaintiff contends that he plausibly alleged that Defendant Regalado had a policy or custom of failing to train TCSO deputies on appropriate use of force. (Docket No. 47 at 13-20). After reviewing the Amended Complaint, the Court addresses the following theories of municipal liability: the decision or ratification by a final policymaker and failure to train and supervise.

6

### A. Decision or Ratification by a Final Policymaker

In his response to the Motion to Dismiss, Plaintiff appears to focus solely on his failure to train claim. However, despite the Court previously finding Plaintiff's allegation that Defendant Regalado's statement that TCSO would take a "no-nonsense approach" to law enforcement at the fair was deficient, Plaintiff retained that allegation in his Amended Complaint, albeit with minor alterations. (*See* Docket No. 41 at 9, 12). Therefore, the Court will briefly address the sufficiency of Plaintiff's allegations as to demonstrating a policy or custom through the decision of an employee with final policymaking authority or ratification by a final policymaker.

The Tenth Circuit has determined that, "[a]s the chief law enforcement officer of the county, the Sheriff is the official policy maker of the county in all matters related to his statutory law enforcement duties[.]" *Attocknie v. Smith*, No. CIV-13-158-JHP, 2014 WL 3496917, at *7 (E.D. Okla. July 11, 2014), citing *Reid v. Hamby*, 124 F.3d 217 (10th Cir. 1997). "[A] municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." *Bryson*, 627 F.3d at 790. In other words, if a final policymaker approves of a subordinate's decision to act unconstitutionally and the basis for such decision, municipal liability may attach. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Jensen v. West Jordan City*, 968 F.3d 1187, 1204 (10th Cir. 2020).

Plaintiff's Amended Complaint appears to allege that Defendant Regalado's statement that TCSO would take a "no-nonsense approach" to security at the fair emboldened "Defendant Whitsett's 'warrior mindset,' leading him [to] unnecessarily escalat[e] his encounter with Plaintiff and his unreasonable use of force." (Docket No. 41 at 12). Defendant Regalado's statement, according to Plaintiff, is representative of a TCSO policy or practice permitting employees to kneel on the necks of restrained suspects. *Id.* at 10. Plaintiff also asserts that TCSO issued statements

following the incident at the fair disputing Plaintiff's version of events and denying that Defendant Whitsett knelt on Plaintiff's neck. *Id.* at 7-8. Defendant Whitsett allegedly was not punished for this conduct and was promoted "not long after[.]" *Id.* at 8-9. Plaintiff claims these allegations indicate that "TCSO approved of and/or authorized the actions of Defendants Whitsett [and] Carr[.]" *Id.* at 9.

Again, the Court finds Plaintiff has not adequately alleged a direct causal link between Defendant Regalado's statement and Plaintiff's alleged injuries. Any causal nexus between Defendant Regalado's statement that law enforcement would take a "no-nonsense approach" to fairgoers carrying firearms and Plaintiff's injuries resulting from Defendant Whitsett's alleged "warrior mindset," and use of excessive force by kneeling on Plaintiff's neck is too attenuated. *See York v. Welch*, No. 20-40580, 2024 WL 775179, at *4 (5th Cir. Feb. 26, 2024) (finding the plaintiff's allegations that the Beaumont Police Chief's comments on the Beaumont Police Department's shoot-to-kill policy were a moving force leading to unreasonable use of force insufficient to state a claim for municipal liability); *Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986) (concluding that the defendant sheriff's statement that he would "rather [he and his employees] be tried by twelve than carried by six" to be "too slender a reed to support the conclusion that he encouraged his deputies to use excessive force."). The Court cannot identify a logical connection between Defendant Regalado's statement regarding gun regulation at a popular public event and an alleged unconstitutional use of force of kneeling on the neck of a restrained suspect. Therefore, the Court finds Plaintiff's allegations remain unsupported as to the claim that Defendant Regalado decided to authorize, encourage, or sanction the use of excessive force in encounters like the one that allegedly occurred in this case based on the "no-nonsense approach" statement.

Moreover, TCSO's denial of Plaintiff's factual allegations following the incident at the fair as to the force used by Defendant Whitsett, in and of itself, is insufficient to support a ratification claim. Disputing the events at issue, without more, does not support a claim that Defendant Regalado approved of Defendant Whitsett's decision to allegedly act unconstitutionally. Furthermore, "[f]ailing to . . . punish does not count as ratification[,]" *Lynch v. Bd. of Cnty. Comm'rs of Muskogee Cnty.*, 786 F. App'x 774, 787 (10th Cir. 2019), citing *Bryson*, 627 F.3d at 790, and neither does simply alleging that a defendant may have been promoted post-incident. *See Dizon v. City of S. San Francisco*, Case No. 18-cv-03733-JST, 2018 WL 5023354, at *5 (N.D. Cal. Oct. 16, 2018), citing *Bennett v. Cnty. of Shasta*, 2:15-xc-01764-MCE-CMK, 2017 WL 3394128, at *4 (E.D. Cal. Aug. 8, 2017); *Moua v. McAbee*, 1:06-cv-00216 OWW SMS, 2007 WL 3492157, at *13 (E.D. Cal. Nov. 14, 2007); *Gavin v. City of Los Angeles*, 2:05-cv-09001-FMC-SSx, 2007 WL 9706236, at *11 (C.D. Cal. Aug. 8, 2007). Therefore, the Court finds Plaintiff's amended allegations do not support the claim that Defendant Regalado ratified Defendant Whitsett's conduct.

Accordingly, Defendant Regalado's Motion to Dismiss is granted, and Plaintiff's municipal liability claim based upon a decision by a final policymaker and ratification by a final policymaker is dismissed with prejudice.

### B.   Failure to Train and Supervise

Defendant Regalado also argues that Plaintiff's allegations supporting his failure to train claim remain deficient in the Amended Complaint based upon the Court's reasoning in its previous order. (Docket No. 50 at 3). Specifically, he asserts that Plaintiff's Amended Complaint "continues to lack sufficient factual allegations to move the claim 'across the line from conceivable to plausible[,]'" as Plaintiff again fails to satisfy the deliberate indifference standard because his

allegations merely identify general categories of training program deficiencies. *Id.* at 2-3. Conversely, Plaintiff contends he has plausibly alleged training deficiencies with the necessary specificity. (Docket No. 47 at 13). He refers to allegations in the Amended Complaint, including TSCO's failure to train its officers on "the danger of applying pressure to a suspect's neck/back while the suspect is lying prone on their stomach in violation of Tenth Circuit precedent[4] and on TSCO's use of force policy which allows officers to use "pressure points," punches, kicks, and strikes to an individual's face, torso, or joint areas during an arrest, but fails to train or instruct its deputies on "how, and when, to use these techniques." (Docket No. 41 at 9-10).

The Supreme Court has warned that "'[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'" *Waller*, 932 F.3d at 1285, quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To allege a failure-to-train theory of liability, "the plaintiff must prove 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need' for additional training." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996), citing *City of Canton*, 489 U.S. at 390. "The Tenth Circuit treats allegations of failure to train and failure to supervise the 'same way.'" *Phelps v. Holliman*, Case No. CIV-23-755-F, 2023 WL 7553627, at *3 (W.D. Okla. Nov. 14, 2023), quoting *Whitewater v. Goss*, 192 F. App'x. 794, 797 (10th Cir. 2006).

To establish deliberate indifference, a plaintiff must make the following showing:

> The deliberate indifference standard may be satisfied when the municipality ha[d] actual or constructive notice that its action or failure to act [was] substantially

---

[4] Plaintiff relies upon *Estate of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2014), *Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008), and *Wilkins v. City of Tulsa*, 33 F.4th 1265 (10th Cir. 2022) for the proposition that "putting substantial or significant pressure on a suspect's neck/back while the suspect is in a face-down prone position after being subdued . . . constitutes excessive force." (Docket No. 47 at 9-12).

10

> certain to result in a constitutional violation, and it consciously or deliberately cho[s]e to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.

*Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769-70 (10th Cir. 2013), quoting *Barney*, 143 F.3d at 1307-08.

This Court recognizes that deliberate indifference requires a "stringent standard of proof" and a showing that a municipal actor "disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61, citing *Bd. of Comm'rs of Bryan Cnty.*, 520 U.S. at 410. Although a plaintiff will ordinarily demonstrate deliberate indifference by showing a pattern of similar constitutional violations by untrained employees, that is not the case here. *Id.* Since Plaintiff has not alleged a pattern of violations, he must sufficiently allege that Defendant Whitsett's conduct constitutes one of the "rare" circumstances from which the unconstitutional consequences of a failure to train are "highly predictable" or "patently obvious." *Waller*, 932 F.3d at 1285, citing *Connick*, 563 U.S. at 61.

In *Canton*, the Supreme Court outlined a circumstance when a city's decision not to train its armed officers on the constitutional constraints on the use of deadly force could reflect the city's deliberate indifference to "highly predictable" unconstitutional consequences of its failure to train especially given the "predictability that an officer lacking specific tools to handle that situation w[ould] violate citizens' rights." *Connick*, 563 U.S. at 63-64, citing *Bd. of Comm'rs of Bryan Cnty.*, 520 U.S. at 409. The Supreme Court in *Connick* further distinguished the "obviousness' of legal training for police officers from prosecutors on the basis that police officers are not equipped with the same training in the law or tools to interpret and apply legal principles and "in the absence of training there is no way for novice officers to obtain the legal knowledge they require." *Id.* at

64. While distinguishable from the facts here, *Connick's* reasoning that there is "no reason to assume that police . . . are familiar with the constitutional constraints [on deadly force]" is relevant considering Plaintiff's allegation of TCSO's failure to train on Tenth Circuit precedent. *Id.* The question then is whether the situation Defendant Whitsett confronted involved "technical knowledge or ambiguous gray areas in the law" making it "highly predictable" or "patently obvious" that a police officer in a similar situation would need specific training from TSCO to not use unreasonable or excessive force "on a suspect's back while the suspect is face down on the ground." (Docket No. 41 at 9-10).

Importantly, the Court does not evaluate whether "better" or "different" training could have prevented the alleged violation but, rather if the training deficiency involves some specific technical knowledge that absent such training would predictably result in an officer making the wrong decision. *Valdez v. Macdonald*, 66 F.4th 796, 826-27 (10th Cir. 2023). Here, the alleged conduct is not so far removed from the training that it can be easily said that the "plainly obvious consequence" of a deficiency in training was the conduct at issue. *See Barney*, 143 F.3d at 1308 (finding that even if the training on inmate rights was inadequate, the sexual assault of inmates was not a plainly obvious consequence of the training deficiency); *see also Schneider*, 717 F.3d at 744 (finding similarly that "specific or extensive training hardly seems necessary for [officers] to know that sexually assaulting [individuals] is inappropriate behavior."). Nor is it the case that the officers had a "complete lack of training" on constitutional standards. *See Calvo-Pino v. Weidl*, 514 F. Supp. 3d 1321, 1330 (D. Kan. 2021) (denying motion to dismiss on failure to train because the municipal defendant's failure to train its officers on Fourth Amendment standards to conduct traffic stops was not necessarily obvious to an untrained officer). Rather, Plaintiff alleges that TCSO/Defendant Regalado "allowed and even trained" officers to continue to utilize this

maneuver and "failed to take reasonable measure to alleviate the risk of harm" despite being aware of the "risks associated with kneeling on the neck of a restrained suspect." (Docket No. 41 at 11). Plaintiff seemingly takes issue with the degree of discretion or "best judgement" left to officers as to when to use pressure points in detaining a suspect and that officers are without guidance and "left to punch, kick, or strike a suspect whenever they see fit." (Docket No. 41 at 10).

Moreover, Plaintiff must provide some explanation as to what additional training could have guided Defendant Whitsett or other officers confronting a similar situation on how to determine when to deploy or cease deploying these techniques. *Teetz v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, No. 22-1134-EFM, 2023 WL 7698030 at *8 (D. Kan. Nov. 15, 2023) (considering plaintiff's allegations on the use of force and noting plaintiff must "explain what additional . . . training would have helped officers know that they should cease its use"). While Defendant Whitsett may have made a decision resulting in injury to Plaintiff during a predictable situation, such showing is not enough to reach a plausible conclusion that Defendant Regalado's failure to train would predictably or obviously cause such a result. *See Connick*, 563 U.S. at 68 ("[P]rov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct' will not suffice'"), quoting *Canton*, 489 U.S. at 391; *see also Simpson v. Little*, 500 F. Supp. 3d 1255, 1268–69 (N.D. Okla. 2020) (finding that even in light of the police chief's own testimony that "shoot/don't shoot training would be helpful" for officers to know when they should or should not use deadly force," merely showing that additional training would have been "helpful in making difficult decisions" does not establish liability for the purposes of failure to train) (citations omitted).

Here, Plaintiff has not plausibly alleged that Defendant Whitsett's use of force was deficient but, rather that Defendant Whitsett should have received training to "avoid" its use under

13

the circumstances. *See Connick*, 563 U.S. at 68; *see also Skillings v. Chisum*, No. 17-CV-572-TCK-JFJ, 2021 WL 3204744, at *6 (N.D. Okla. July 28, 2021) (finding that an allegation that officers "should have been trained" regarding the documentation necessary to make an arrest was far too conclusory to plausibly allege failure to train). This conclusion is well supported by Plaintiff's own allegations that at the time he was allegedly struck, he was not disobeying commands, actively resisting, verbally threatening anyone, attempting to flee, or suspected of committing a crime. (*See* Docket No. 41 at 4-5). Thus, this is not a case in which Defendant Whitsett "made the wrong call regarding the level of force to employ" against the Plaintiff but, rather the use of force was allegedly improper in the first place. *See Waller*, 932 F.3d at 1288.

Further, crediting Plaintiff's own allegations, if the Court accepts there was a deficiency in training, Plaintiff still fails to show what specific training TCSO/Defendant Regalado could have provided that would have put officers on notice that they "may not violently assault a restrained detainee who is not acting in a threatening manner." *See Waller*, 932 F.3d at 1288; *see also Welch v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.,* 2019 WL 4168824, at *4 (D. Kan. Sept. 3, 2019) ("It is not "patently obvious" that excessive force of the type alleged is a highly predictable result of failing to specifically explain to deputies it is not appropriate to punch detainees in the face when they are handcuffed or in retaliation for expressing frustration").

Therefore, Plaintiff has failed to plausibly allege that the need for more or different training was so obvious that Defendant Regalado can "reasonably be said to have been deliberately indifferent to the need for additional training." *See Waller*, 932 F.3d at 1284. Even if more or different training could have prevented the alleged injury to Plaintiff, that alone does not demonstrate Defendant Regalado's deliberate indifference. Accordingly, the Court finds that Plaintiff fails to allege a municipal liability claim based upon the failure to train and supervise

against Defendant Regalado. Defendant Regalado's Motion to Dismiss is granted, and Plaintiff's claim is dismissed with prejudice.

## Conclusion

For the reasons discussed herein, Defendant Regalado's Motion to Dismiss Plaintiff's Amended Complaint (Docket No. 44) is hereby **GRANTED**. Defendant Vic Regalado, in his official capacity, is therefore dismissed from the case.

IT IS SO ORDERED this 15th day of October, 2025.

MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT